**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **VINNY TROIA,** | ) | |
| *individually and on behalf of* | ) | |
| *all others similarly situated,* | ) | |
| | ) | **Case No. 19-CV-1647** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL** |
| | ) | **DEMANDED** |
| **TINDER, INC., MATCH GROUP, LLC,** | ) | |
| **MATCH GROUP, INC.,** *and* | ) | |
| **DOES 1 through 10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Vinny Troia, individually and on behalf of all others similarly situated, hereby files this, his Class Action Complaint, against Defendants Tinder, Inc. ("Tinder"), Match Group, LLC, Match Group, Inc. (both Match entities shall be referred to collectively as "Match"), and DOES 1 through 10 (collectively "Defendants") for Tinder's unfair and illegal age-discriminatory pricing scheme and their use of unconscionable contract provisions, all in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

## I. PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Vinny Troia is a citizen and resident of St. Louis County, Missouri.

2.      Plaintiff brings this Class Action Complaint individually and on behalf of a putative class of all Missouri residents.

3.      Defendant Tinder, Inc. is a Delaware corporation having its principal place of business in Dallas, Texas.

4.      Defendant Match Group, LLC is a Delaware limited liability company also having its principal place of business in Dallas, Texas.  Match Group, LLC operates, owns, and/or is doing

business as Tinder, which is one of its subsidiaries.

5.      Defendant Match Group, Inc. is a Delaware corporation also having its principal place of business in Dallas, Texas.  Match Group, Inc. also operates, owns, and/or is doing business as Tinder, which is one of its subsidiaries.

6.      The above-named Defendants, and their subsidiaries and agents, are collectively referred to herein as "Defendants."  The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  If necessary, Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7.      At all relevant times, each and every defendant was acting as an agent and/or employee of each of the other Defendants, and was the owner, agent, servant, joint-venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Defendants.  On information and belief, each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

8.      At all relevant times, each defendant was the successor of the other and each assumes the responsibility for each other's acts and omissions.

9.       This court has jurisdiction over this asserted class action pursuant to 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs; and any member of the class of plaintiffs is a citizen of a State different from Defendants.  The Court's jurisdiction includes any ancillary or pendent state-law claims.  28 U.S.C. § 1367.

10.      Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims in this action occurred in this

district.

11.     This forum also is superior in convenience to any other, as all of the Plaintiffs are or were Missouri citizens and are located in Missouri, the underlying contracting that this lawsuit arises from occurred in Missouri, and the acts complained of violated Missouri law.

12.     Any later-asserted choice-of-venue or forum-selection language impugning venue in this district is, *inter alia,* unconscionable as a matter of law and against public policy and, hence, inapplicable and unenforceable.

13.     This asserted class action comports with Federal Rule of Civil Procedure 23.  Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable.  This action raises questions of law and fact common among Plaintiffs.  The claims of lead Plaintiff is typical of all Plaintiffs' claims.  Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

14.     <u>Class definition</u>:  Plaintiff Troia bring this action on behalf of himself and a class of similarly-situated persons defined as follows: All persons in Missouri that, at any time during the Class Period, purchased "Tinder Plus" (as defined *infra*), who were over the age of 30, and who did not receive a discount for the Tinder Plus service due to their age.  The Class Period begins five years prior to the date of the filing of this Complaint, and ceases upon the date of the filing of this Complaint. Excluded from the Class are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of

the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

15.     Numerosity:  Upon information and belief, the Class includes thousands, if not tens of thousands, of individuals on a statewide basis, making their individual joinder impracticable.  Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are readily ascertainable from Defendants' records.

16.     Typicality: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, employing an "unfair practice" under the MMPA, using discriminatory pricing and using unconscionable contract terms in offering and selling "Tinder Plus" to Plaintiffs.

17.     Adequacy:  Plaintiff Troia is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent and experienced counsel, and he intends to prosecute this action vigorously.  The interests of the Class will be protected fairly and adequately by Troia and his counsel.

18.     Commonality:  Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendants' discriminatory pricing of "Tinder Plus" is an "unfair practice" pursuant to the MMPA; (b) whether the arbitration agreement Defendants force "Tinder Plus" customers to agree to is unconscionable pursuant to the MMPA; (c) whether the arbitration agreement Defendants force "Tinder Plus" customers to agree to is unenforceable due to unconscionability and/or in violation of Missouri public policy including the MMPA; (d) whether and to what extent the Class members were injured by Defendant's illegal conduct; (e) whether the Class members are entitled to statutory damages, (f) whether the Class members are

4

entitled to declaratory relief; and (g) whether the Class members are entitled to injunctive relief.

19.     Superiority:  This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct.  Thus, it would be extremely difficult for the individual Class members to obtain effective relief.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

## II. **BACKGROUND**

*Facts Particular to Troia and Representative of the Proposed Class*

20.     In or around June of 2019, Plaintiff downloaded an application ("app") called Tinder from Defendant onto his iphone mobile device.  Tinder markets itself as a dating application for mobile phones.

21.     Tinder utilizes a user's location using the GPS built into their phone, then uses other information (some provided by the user) to create a profile.  A Tinder profile is made up of a user's first name, occupation, age, and photos.

22.     Tinder then finds a user potential matches within a nearby geographical radius, and suggests potential matches, which a user has the option to like or pass.

23.     Tinder's primary draw for consumers is a feature known as a "swipe," which is the act of swiping one's finger on their smart phone's touch screen within the Tinder app either right or left, in order to approve or pass, respectively, on a suggested potential match.  If both users "swipe right" and "like" one another, Tinder will create a direct line of communication between the individuals, and allow them to start messaging one another.

24.     In downloading the Tinder app in June of 2019, Plaintiff was informed, by various

advertisements, promotions, and websites, that Defendants' app was a "free online dating app."

25.     On information and belief, in March of 2015, Tinder introduced its "Tinder Plus" services, a Tinder account that provides supplemental services to the basic Tinder account, such as an option to "change your location," "hide distance," "rewind your last swipe," no paid advertisements, a limited number of "super swipes" per day, the ability to hide your age, and control over who you see.

26.     Tinder announced publically at that time that it would be charging $9.99 per-month to consumers for these services (at a 50% discount), but notably, that any individual who was over 30 years of age would be charged $19.99 per-month for the identical services.

27.     In June of 2019, Plaintiff, who at the time was over the age of 30, purchased a subscription to the "Tinder Plus" app, for $19.99 per-month, to take advantage of the supplemental services provided.

28.     Plaintiff purchased a "Tinder Plus" account for $19.99 per month, and was not offered a discount by Tinder, due to his being over 30 years of age.

29.     On information and belief, Defendants already have been sued in various other jurisdictions across the country for employing an illegal and discriminatory pricing scheme in relation to "Tinder Plus."

30.     Nonetheless, despite the obvious unfairness and discriminatory nature of the pricing scheme, Defendants continue to charge individuals over 30 years of age approximately twice as much for the exact same service, making discounts available to customers on the sole basis of their age.

31.     Defendants offer no discount for the "Tinder Plus" services other than that offered to consumers based solely upon their age.

32.     When Plaintiff purchased Tinder Plus in June of 2019, Tinder treated him unfairly, discriminating against him due to his age because he could have obtained a better rate if he were under 30 years of age, or represented to Tinder that he was less than 30 years of age.  Plaintiff was not made

aware of any potential discounts at the time of his purchase of "Tinder Plus."

33.    Defendants' discriminatory pricing scheme is arbitrary and constitutes an "unfair practice" in violation of the MMPA.

34.    The terms of the MMPA, particularly the term "unfair practice," must be liberally construed to protect consumers.[1]

35.    The 2019 version of the Merriam-Webster dictionary provides, as one definition of "unfair," something that is "not equitable in business dealings."  "Equitable" is defined as "dealing fairly and equally with all concerned." Obviously, Defendants' age-discriminatory pricing scheme does not deal "equally" with those over 30 years of age who are arbitrarily forced to pay approximately twice as much as younger persons for the exact same service.

36.    Moreover, a Missouri regulation, 15 Mo. C.S.R. § 60–8.020, draws its authority from, and was promulgated to enforce, the MMPA; Section 60-8.020 provides that an "unfair practice" is any practice which, *inter alia,* "[o]ffends any public policy as it has been established by the Constitution, statutes or common law of this state … or … is unethical, oppressive or unscrupulous."

37.    Defendants' completely arbitrary and discriminatory pricing scheme offends the same Missouri public policy underlying Missouri's express prohibitions against age discrimination in multiple other areas, the public policy that all Missouri citizens are entitled to full and equal accommodations, advantages, facilities, privileges, and/or services regardless of factors like age, sex, and/or race; moreover, Defendants' arbitrary and discriminatory pricing scheme is both "unethical" and "unscrupulous."

38.    In addition, 15 C.S.R. § 60–8.020 further provides that an "unfair practice" is any practice which, *inter alia,* "[o]ffends any public policy as it has been established by … the Federal Trade

---

[1] According to the Supreme Court of Missouri, "[t]he literal words [of the MMPA] cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co. Inc. of Ohio v. Nixon,* 37 S.W.3d 237, 240 (Mo. 2001).

Commission, or its interpretive decisions…"

39.     The Federal Trade Commission ("FTC") has enforcement or administrative responsibilities under multiple laws, including the Federal Trade Commission Act and the Clayton Act.

40.     The Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13, provides, *inter alia,* that it "shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality …"

41.     Accordingly, regardless of whether Defendants' arbitrary and age-discriminatory pricing scheme violates the exact "letter" of the Robinson-Patman Act, the pricing scheme clearly offends some of the same public policies underlying that Act – particularly that consumers should be free from arbitrary pricing discrimination based on factors such as age, gender, race, and/or sexual orientation.

42.     Likewise, the Federal Trade Commission enforces the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* (the "ECOA").

43.     The ECOA, *inter alia,* makes it unlawful for a creditor to discriminate against any individual on the basis of age, race, color, religion, sex or marital status.

44.     Accordingly, regardless of whether Defendants' arbitrary and age-discriminatory pricing scheme violates the exact "letter" of the ECOA, the pricing scheme clearly offends some of the same public policies underlying the ECOA – particularly that individuals should be free from arbitrary discrimination based on factors such as age, gender, and/or race.

45.     Thus, for several reasons, it is clear that Defendants' arbitrary and discriminatory pricing scheme also "offends any public policy as it has been established … by the [FTC]." *See* 15 C.S.R. § 60–8.020.

46.     As such, for at least the multiple, independent reasons set forth *supra,* Defendants' arbitrary and age-discriminatory pricing scheme constitutes an "unfair practice" prohibited by the

MMPA.

47.     In addition to Defendants' arbitrary and discriminatory pricing scheme used for "Tinder Plus," Defendants also force every "Tinder Plus" subscriber to agree to a procedurally and substantively unconscionable "arbitration agreement."

48.     The purported agreement to arbitrate that all "Tinder Plus" users must accept is, for multiple reasons, unconscionable in-and-of-itself.

49.     The employment of any unconscionable term in connection with a transaction also is an "unfair practice" in violation of the MMPA.  *See,* 15 Mo. C.S.R § 60–8.080(1) (2011) ("It is an unfair practice for any person in connection with the sale of merchandise[2] [to] … use any unconscionable contract or contract term.").

50.     In addition to constituting an independent violation of the MMPA, under Missouri law, unconscionable contractual provisions are unenforceable as against public policy; thus, the purported arbitration agreement contained within the broader sign-up "contract" is unenforceable.

51.     Moreover, since the arbitration agreement purports to effectively waive Missouri citizens' right to pursue a class action against Defendants, the agreement is void as against public policy because the MMPA expressly authorizes class action, *see* R.S.Mo. § 407.025, and the Missouri Supreme Court has held that "the public policy involved in Chapter 407 [the MMPA] is so strong that parties will not be allowed to waive its benefits." *Huch v. Charter Communications, Inc.,* 290 S.W.3d 721, 724 (Mo. 2009).

52.     In any event, as described above, inherent in Defendants' sale of "Tinder Plus" to all Missouri citizens 30 years of age or older, are at least two "unfair practices" in violation of the MMPA.

---

[2] "Merchandise,' as the term is included in the MMPA, includes services such as "Tinder Plus." *See* Mo. Rev. Stat. § 407.010(4)("'Merchandise', [includes] any objects, wares, goods, commodities, intangibles, real estate or services[.]"

## IV.    CLAIMS

**COUNT ONE: VIOLATION OF THE MMPA – "Unfair Practice" -- Discriminatory Pricing**

53.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

54.     The Defendants violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA"), by systematically using an arbitrary and unfair discriminatory pricing scheme in selling the "Tinder Plus" service to all Missouri residents 30 years of age or older.

55.     For at least the multiple independent reasons set forth *supra*, Defendants' discriminatory pricing scheme constitutes an "unfair practice" pursuant to the MMPA, and is thus illegal under Missouri law.

56.     Pursuant to Defendants' numerous violations of the MMPA, Plaintiffs were damaged, suffering ascertainable losses in the amount of additional fees paid over the life of their subscriptions to "Tinder Plus" due to Defendants' discriminatory pricing scheme.

57.     Due to Defendants' illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

58.     Particularly because Defendants have long been on notice that their discriminatory pricing scheme is illegal and contrary to public policy yet have refused to reform and/or cease such unfair practice, Defendants are liable to pay punitive damages under the MMPA.

**COUNT TWO: VIOLATION OF THE MMPA – Unconscionable Arbitration Agreement**

59.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

60.     The Defendants, in forcing all subscribers to "Tinder Plus" to agree to a procedurally and substantively unconscionable arbitration agreement, violated the MMPA.

61.     The employment of any unconscionable term in connection with a transaction is an "unfair practice" in violation of the MMPA.  *See,* 15 Mo. C.S.R § 60–8.080(1) (2011).

62.     Pursuant to Defendants' numerous violations of the MMPA, Plaintiffs were damaged, suffering ascertainable losses in the amount of fees paid to Defendants for "Tinder Plus."

63.     Due to Defendants' illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

64.     Pursuant to Defendants' numerous violations of the MMPA, Plaintiffs may recover compensatory damages, attorneys' fees, and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an order certifying this action as a class action and appointing Plaintiff Troia as class representative and his counsel as class counsel.  Plaintiff requests that this court find that the Defendants violated the MMPA and award Plaintiffs compensatory damages, restitution, attorneys' fees, punitive damages, costs, and such further relief as the Court deems just.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*

11