**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VINNY TROIA, *individually and on behalf of all others similarly situated,* | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:19-CV-01647-RLW |
| TINDER, INC., MATCH GROUP, LLC, MATCH GROUP, INC., *and* DOES 1 through 10, | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS, OR ALTERNATIVELY STAY, AND TO COMPEL INDIVIDUAL ARBITRATION**

## I. INTRODUCTION AND BACKGROUND

Plaintiff Vinny Troia is a computer systems expert who serves as a professional consultant to Plaintiff's counsel.[1] On June 6, 2019, Plaintiff created an account on Defendants' smartphone dating app Tinder. Declaration of Joseph Ciesla ("Ciesla Decl.") ¶ 7. Less than two minutes after creating his account, Plaintiff purchased a subscription to the dating app's suite of premium features, known as Tinder Plus. *Id*. Sometime later that same day—also on June 6, 2019—Plaintiff instituted this lawsuit. Dkt. 1 ("Complaint" or "Compl.").

Plaintiff asserts two claims under the Missouri Merchandising Practices Act ("MMPA"). The first alleges age discrimination, on the grounds that users of the Tinder dating app over the age of 30 are charged a higher price than the discounted price charged to younger users for access to premium features of the app. Compl. ¶¶ 53-58. The second alleges that the parties'

[1] *See* http://harvathlawgroup.com/team#professionals (last visited July 10, 2019).

arbitration agreement is unconscionable. *Id.* ¶¶ 59-64. Plaintiff, individually and on behalf of a putative class, has sued Tinder, Inc., Match Group, LLC, and Match Group, Inc. (collectively, "Tinder").[2]

Tinder is a free, smartphone-based dating app. Ciesla Decl. ¶¶ 2-3. The app displays profiles of other users and allows a user to make a dragging motion to the right on another user's profile to express interest or left to express disinterest. *Id.* ¶ 2. If two users express mutual interest, they can then communicate within the app. *Id.* In March 2015, Tinder released a suite of premium features called Tinder Plus that is available for a monthly fee. *Id.*

Tinder moves to compel arbitration because Plaintiff agreed to Tinder's Terms ("Terms of Use" or "TOU"), and the arbitration agreement that is part of the TOU requires individual arbitration of this dispute.[3] Plaintiff agreed to the TOU when creating his account and agreed to the TOU again when subscribing to Tinder Plus, both of which actions are conditioned on a user's (*e.g.*, Plaintiff's) agreement to the TOU. Ciesla Decl. ¶¶ 4-5.

Specifically, in order to create his account, Plaintiff began on a sign-up screen, where he had to tap a "Create a New Account" button to proceed. *Id.* ¶ 4 & Ex. 1. The sign-up screen clearly states that: "By creating an account or logging in, you agree to our Terms and Privacy Policy." *Id.* The TOU is directly reviewable through a conspicuous hyperlink in this disclosure,

---

[2] Match Group, LLC, which is owned by Match Group, Inc., now owns all of Tinder, Inc.'s assets, including Tinder. Ciesla Decl. ¶ 3. There is no need for purposes of this motion to distinguish among these three defendants.

[3] Tinder's motion defers its time to answer Plaintiff's Complaint: "A defendant in a pending lawsuit may file a petition or motion to compel arbitration in lieu of an answer to the complaint . . . ." *Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F. App'x 604, 607-08 (10th Cir. 2011) (internal quotation and alteration omitted); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 83 (2000) ("In lieu of an answer, petitioners filed a motion to compel arbitration, to stay the action, or, in the alternative, to dismiss."); *Carlisle v. CitiMortgage*, No. 4:06-CV-677 CAS, 2007 WL 2121064, at *1 (E.D. Mo. July 24, 2007) (citing *Faber v. Menard, Inc.*, 367 F.3d 1048,

right above the "Create a New Account" button. *Id*. Further, in order to subscribe to Tinder Plus, Plaintiff began on a subscription sign-up screen, where he selected a subscription and then had to tap a "Continue" button to proceed. *Id*. ¶ 5 & Ex. 2. The Tinder Plus subscription sign-up screen clearly states that: "By tapping Continue, you agree to our Privacy Policy and Terms." *Id*. The TOU is directly reviewable through a conspicuous hyperlink in this disclosure, below the "Continue" button. *Id*.

The parties' arbitration agreement provides in relevant part that:

> The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or the Service, regardless of the date of accrual and including past, pending, and future claims, shall be BINDING ARBITRATION administered by the American Arbitration Association under the Consumer Arbitration Rules. The one exception to the exclusivity of arbitration is that you have the right to bring an individual claim against Tinder in a small claims court of competent jurisdiction in the county in which you reside, or in Dallas County, Texas. Such arbitration shall be conducted by written submissions only, unless either you or Tinder elect to invoke the right to an oral hearing before the Arbitrator. But whether you choose arbitration or small claims court, you agree that you will not under any circumstances commence, maintain, or participate in any class action, class arbitration, or other representative action or proceeding against Tinder.
>
> . . .
>
> If you assert a claim against Tinder outside of small claims court, your rights will be determined by a NEUTRAL ARBITRATOR, NOT A JUDGE OR JURY, and the arbitrator shall determine all claims and all issues regarding the arbitrability of the dispute. The same is true for Tinder. Both you and Tinder are entitled to a fair hearing before the arbitrator. The arbitrator can generally grant the relief that a court can, but you should note that arbitration proceedings are usually simpler and more streamlined than trials and other judicial proceedings. Decisions by the arbitrator are enforceable in court and may be overturned by a court only for very limited reasons.
>
> . . .
>
> WHETHER TO AGREE TO THIS ARBITRATION AGREEMENT IS AN IMPORTANT DECISION. IT IS YOUR DECISION TO MAKE, AND YOU

1051 (8th Cir. 2004)) ("[C]ourts addressing this issue consistently allow defendants to file motions to compel arbitration instead of answering a complaint.").

> SHOULD TAKE CARE TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS — INCLUDING BUT NOT LIMITED TO AN ATTORNEY — REGARDING THE CONSEQUENCES OF YOUR DECISION, JUST AS YOU WOULD WHEN MAKING ANY OTHER IMPORTANT BUSINESS OR LIFE DECISION.

Ciesla Decl. Ex. 3 § 15 (all-capitalization emphasis in original).

The arbitration agreement in turn directed Plaintiff to visit gotinder.com/arbitration via hyperlink for details regarding the arbitration procedures. *See id.* ¶ 5 & Ex. 4.

Plaintiff's agreement to Tinder's TOU is all Tinder needs to demonstrate for purposes of this motion. The secondary question of whether Plaintiff's claims themselves are arbitrable—including whether the parties' arbitration agreement is unconscionable—need not be reached because the parties' arbitration agreement delegates that question to the arbitrator. *Id*. Ex. 3 § 15.3 ("[T]he arbitrator shall determine all claims and all issues regarding the arbitrability of the dispute."). In any event, Plaintiff's claims are in fact arbitrable, because the arbitration agreement applies broadly to any claim arising out of or relating to the TOU or the Tinder service, and Plaintiff's claims fall well within that ambit.

## II. ARGUMENT

### A. Plaintiff Assented to the TOU and Arbitration Agreement by Creating a Tinder Account and Subscribing to Tinder Plus.

Federal courts have observed in recent years that "[t]he act of contracting for consumer services online is now commonplace in the American economy. Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider." *Nicosia v. Amazon.com, Inc.*, --- F. Supp. 3d ----, 14-CV-4513 (ILG) (LB), 2019 WL 2482674, at *17 (E.D.N.Y. June 14, 2019) (quoting *Selden v. Airbnb, Inc.*, No. 16-cv-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016)).

When it comes to such online terms and conditions, there are three generally recognized methods of obtaining a user's consent: clickwrap; browsewrap; and a hybrid that is referred to in a variety of manners, including "browsewrap-that-resembles-clickwrap" or "sign-up wrap." In a clickwrap agreement, "users are required to click on an 'I agree' box after being presented with the list of terms and conditions of use." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014); *accord, e.g.*, *Appistry, Inc. v. Amazon.com, Inc.*, No. 4:13CV2547 HEA, 2015 WL 881507, at *3 (E.D. Mo. Mar. 1, 2015) (discussing authority). In a browsewrap agreement, by contrast, a user is "not require[d] . . . to manifest assent to the terms and conditions expressly . . . . A party instead gives his assent simply by using the website." *Nguyen*, 763 F.3d at 1176 (internal quotation and alterations omitted); *accord, e.g.*, *Burcham v. Expedia, Inc.*, No. 4:07CV1963 CDP, 2009 WL 586513, at *3 n.5 (discussing authority).

Tinder uses a hybrid method sometimes referred to as sign-up wrap. In such a hybrid agreement, the user is not required to click on an "I agree" box after being presented with terms and conditions of use, but the user is still "required to affirmatively acknowledge the agreement before proceeding with use" of the site. *Nguyen*, 763 F.3d at 1176. "Courts will give effect to hybridwrap terms where the button required to perform the action manifesting assent (*e.g.*, signing up for an account or executing a purchase) is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms." *Nicosia*, 2019 WL 2482674, at *8 (collecting cases where courts, under circumstances like those in this case, have held that online users had assented to online terms and conditions); *see also Selden*, 2016 WL 6476934, at *5 (internal quotations omitted; collecting similar cases) ("[S]ign-in-wrap agreements . . . tend to be enforced if the hyperlinked terms and conditions is next to the only button that will allow the user to continue use of the website.").

Here, Plaintiff manifested assent to Tinder's TOU by tapping the "Create a New Account" button on the sign-up screen, directly below a disclosure clearly explaining that doing so constituted agreement to the TOU, which itself was accessible via a hyperlink in that disclosure. *See* Ciesla Decl. ¶ 4 & Ex. 1. And Plaintiff again manifested assented to Tinder's TOU by tapping the "Continue" button on the Tinder Plus subscription sign-up screen, directly above a disclosure that also clearly explained that doing so constituted agreement to the TOU, which was similarly accessible via a hyperlink in that disclosure. *See* Ciesla Decl. ¶ 5 & Ex. 2.

Courts have repeatedly found this method of assent fully enforceable, <u>including as to Tinder's own TOU</u>. *See, e.g.*:

- *Kim v. Tinder, Inc.*, No. CV 18-03093 JFW (AS), 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) ("Plaintiff consented to the TOU by tapping the Tinder Log In button directly below a disclosure that clearly explained that doing so constituted agreement to the TOU, which itself was accessible via a hyperlink in the disclosure.");
- *Bernadino v. Barnes & Noble Booksellers, Inc.*, 17-CV-04570 (LAK) (KHP), 2017 WL 7309893, at *6-11 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) (plaintiff bound by terms of use where she clicked "Submit Order" button to make purchase and language just below button stated "By making this purchase you are agreeing to our Terms of Use and Privacy Policy" and provided hyperlink to both terms of use and privacy policy);
- *Forby v. One Techs., LP*, No. 15-0757-DRH-PMF, 2016 WL 1321194, at *1 (S.D. Ill. Apr. 6, 2016) (enforcing terms and conditions where user clicked "Continue" button and terms were hyperlinked right above button);
- *Graf v. Match.com, LLC*, 2 CV 15-3911 PA (MRWx), 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (compelling arbitration where user registered for account by clicking "Continue" button adjacent to hyperlink to terms of use that contained arbitration provision);
- *Crawford v. Beachbody, LLC*, No. 14cv1583–GPC(KSC), 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (plaintiff bound by forum selection clause, where she clicked on button marked "Place Order" above which was a statement informing her that by clicking "Place Order" she was subject to website's terms and conditions, available on the same screen via hyperlink);
- *Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497(LLS), 2014 WL 1652225, at *1-3 (S.D.N.Y. Apr. 24, 2014) (plaintiff bound by arbitration clause in terms of use where he clicked

"Shop Now" button next to statement informing him that "the consumer will become a Gilt member and agrees to be bound by the 'Terms of Membership'" available next to the button as a hyperlink);

- *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012) (plaintiff bound by terms of use accessible via hyperlink below "Sign Up" button);
- *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 907-12 (N.D. Cal. 2011) (plaintiff bound by arbitration clause where she clicked on button marked "accept" above statement indicating that clicking on the button meant assenting to the hyperlinked terms of service);
- *Major v. McCallister*, 302 S.W.3d 227, 229-31 (Mo. Ct. App. 2009) (plaintiff bound by terms of use accessible via hyperlink next to registration button).

There is no basis, here, for this Court to reach a different result than was reached in the cases directly above.

**B. The Parties' Binding Arbitration Agreement Must Be Enforced, and Plaintiff Must Be Compelled to File His Claims Individually in Arbitration.**

As explained above, by creating an account with Tinder, Plaintiff agreed that any dispute relating to the TOU or the Tinder service would be resolved through individual, binding arbitration, administered by the American Arbitration Association under its Consumer Arbitration Rules. *See* Ciesla Decl. Ex. 3 § 15.1:

> The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or the Service, regardless of the date of accrual and including past, pending, and future claims, shall be BINDING ARBITRATION administered by the American Arbitration Association under the Consumer Arbitration Rules. . . . [Y]ou agree that you will not under any circumstances commence, maintain, or participate in any class action, class arbitration, or other representative action or proceeding against Tinder.

*Id*. (all-capitalization emphasis in original).

Plaintiff flouted that agreement by filing suit in this Court, <u>and</u> by purporting to bring that suit as a putative class action. Tinder asks this Court to hold Plaintiff to his agreement and order that, if Plaintiff wishes to proceed with his claims, he must do so individually in arbitration.

"Arbitration agreements are governed by the Federal Arbitration Act ('FAA')." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001). Moreover, here, the TOU expressly provides that the parties' arbitration agreement "shall be governed by the Federal Arbitration Act." Ciesla Decl. Ex. 3 § 16. The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such conduct or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The FAA further provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The Supreme Court has repeatedly stated that "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989)). Arbitration agreements must be analyzed against the backdrop of the FAA, which reflects a "liberal federal policy favoring arbitration" and "makes arbitration agreements valid, irrevocable, and enforceable as written . . . ." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) (internal quotations omitted). Congress enacted the FAA "to reverse longstanding judicial hostility to arbitration agreements and to place them on the same footing as other contracts." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (internal quotation and alteration omitted). In the FAA, "Congress has instructed federal courts to enforce arbitration agreements according to their terms—<u>including terms providing for individualized proceedings</u>." *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1619 (2018) (emphasis added). The FAA leaves no place for

discretion by a district court, but instead mandates that district courts direct parties to proceed to arbitration on issues subject to their arbitration agreement. *See Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 91-92; *Gilmer v. Interstate Johnson Lane Corp.*, 550 U.S. 20, 26 (1991).

This case concerns a commercial transaction within the scope of the FAA. Tinder has been aggrieved by Plaintiff's failure to abide by his agreement to arbitrate, including by his agreement not to commence a class action against Tinder. *See* Ciesla Decl. Ex. 3 § 15.1 ("[Y]ou agree that you will not under any circumstances commence, maintain, or participate in any class action, class arbitration, or other representative action or proceeding against Tinder."). This Court should simply then order individualized arbitration under the terms Plaintiff agreed to. *See in addition to* 9 U.S.C. §§ 2, 4 *and Epic Sys. Corp.*, 138 S.Ct. at 1619, *e.g.*:

- *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1163-66, 1168 (8th Cir. 2017) (remanding to district court to compel individual arbitration where agreements at issue provided that "all . . . disputes or claims will be resolved exclusively through a final and binding arbitration on an individual basis and not in any form of class, collective, or representative proceeding");
- *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 728-29 (8th Cir. 2001) ("because the . . . agreements make no provision for arbitration as a class, the district court did not err by compelling appellants to submit their claims to arbitration as individuals").[4]

Such an order ends the matter because, as explained directly below, the parties have

---

[4] *See also generally, e.g.*, *Cova v. Charter Commnc's, Inc.*, No. 4:16-cv-469-RLW, 2017 WL 666097 (E.D. Mo. Feb. 17, 2017) (White, J.); *Jones v. Titlemax of Mo., Inc.*, No. 4:15-cv-01361-JAR, 2016 WL 4158886 (E.D. Mo. Aug. 6, 2016); *Volpe v. Advance Am.*, No. 4:15 CV 1119 JMB, 2015 WL 5124202 (E.D. Mo. Sept. 1, 2015); *Iappini v. Silverleaf Resorts, Inc.*, 116 F. Supp. 3d 932 (E.D. Mo. 2015) (all granting motions to compel individual arbitration where arbitration agreements contained class waivers or made no provision for class arbitration).

agreed that it is up to the arbitrator to decide his or her own jurisdiction, as well as the arbitrability of any claim.

**C. The Scope and Enforceability of the Arbitration Agreement Is a Question for the Arbitrator.**

The Supreme Court has recognized that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (holding that, where an arbitration agreement expressly delegates questions such as arbitrability to the arbitrator, a claim that an arbitration agreement is unconscionable is for the arbitrator to decide). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019) (emphasis added). "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*.

This principle applies squarely here because, in the arbitration agreement in the TOU, the parties agreed that "the arbitrator shall determine all claims and all issues regarding the arbitrability of the dispute." Ciesla Decl. Ex. 3 § 15.3. Such a delegation provision is to be treated as valid under Section 2 of the FAA, and enforced under Sections 3 and 4 thereof, leaving any challenge to the arbitration agreement to the arbitrator. *See Henry Schein, Inc.*, 139 S.Ct. at 529; *Rent-A-Center, West, Inc.*, 561 U.S. at 72. No additional analysis is necessary, or appropriate, in order for this Court to grant Tinder's motion.

Nevertheless, the parties' arbitration agreement also incorporates the rules of the American Arbitration Association ("AAA"): "The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or the

Service . . . shall be BINDING ARBITRATION administered by the American Arbitration Association under the Consumer Arbitration Rules." Ciesla Decl. Ex. 3 § 15.1. Rule R-14(a) of the AAA Consumer Arbitration Rules provides that: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim . . . ." *Id.* available at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf (last visited July 10, 2019).[5]

The Eighth Circuit and courts in this District hold that incorporation of the AAA Rules in an arbitration agreement demonstrates that parties' assent that the arbitrator—rather than the court—will determine whether the scope of the dispute falls under the arbitration provision.

The Eighth Circuit's decision in *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) is on point. In *Fallo*, the court held that an arbitration agreement's incorporation of the AAA's Commercial Arbitration Rules—and specifically Rule R-7(a), which is identical to Rule R-14A of the AAA Consumer Arbitration Rules[6]—"is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court." 559 F.3d at 878 (explaining that this conclusion holds as to "other rules giving arbitrators the authority to determine their own jurisdiction" and not just to the AAA Commercial Arbitration Rules); *see also, e.g.*, *Bray v. United Ins. Co. of Am.*, No. 4:14-CV-01390-CEJ, 2014 WL 6389569, at *3 (E.D. Mo. Nov. 14, 2014) (holding that arbitration agreement's incorporation of AAA Rules required arbitration of claim that agreement was unconscionable); *Fox v. Career*

---

[5] "Courts take judicial notice of AAA Rules on the theory that the AAA Rules are incorporated by reference in the arbitration agreement at issue, or that the AAA Rules are 'a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522 (JFB)(GRB), 2014 WL 3013294, at *10 n.6 (E.D.N.Y. July 3, 2014) (quoting Fed. R. Evid. 201(b)(2); citing cases).

*Educ. Corp.*, No. 4:11 CV 1584 DDN, 2012 WL 1205155, at *2-4 (E.D. Mo. Apr. 11, 2012) (similar).

Because the arbitration agreement in the TOU expressly delegates gateway questions concerning arbitrability to the arbitrator, this Court must abstain from addressing such issues, including Plaintiff's claim that the parties' arbitration agreement is unconscionable under Missouri law.[7]

**D. Plaintiff's Lawsuit and Putative Class Claims Must Be Dismissed.**

"[W]here all of the issues raised in the Complaint must be submitted to arbitration in accordance with a valid and enforceable arbitration agreement, most courts agree that dismissal of the cause, rather than imposing a stay, is appropriate." *Rothman Furniture Stores, Inc. v. Everest Software, Inc.*, No. 4:10-cv-848 CDP, 2010 WL 4319707, at *2 (E.D. Mo. Oct. 22, 2010)

---

[6] *See* https://www.adr.org/sites/default/files/Commercial%20Rules.pdf (last visited July 10, 2019).

[7] There is of course no merit to Plaintiff's assertion that the parties' arbitration agreement is unconscionable under Missouri law. Plaintiff points only to the arbitration agreement's class waiver, asserting that it is allegedly violative of Missouri public policy enshrined in the MMPA. *See* Compl. ¶ 51. Plaintiff is wrong.

First, Missouri law is well-settled that an arbitration agreement's class waiver cannot be singled out as a basis for a finding of unconscionability. *See Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 514-17 (Mo. 2012) (reversing denial of motion to compel class action plaintiff to individually arbitrate his claim; stating that, "post-*Concepcion*, courts may not apply state public policy concerns to invalidate an arbitration agreement even if the public policy at issue aims to prevent undesirable results to consumers"); *Lopez v. H&R Block, Inc.*, 429 S.W.3d 497, 500-03 (Mo. Ct. App. 2014) (similar).

Second, as Judge Sippel carefully explained in *Iappini v. Silverleaf Resorts, Inc.*, 116 F. Supp. 3d 932 (E.D. Mo. 2015), both the Supreme Court and the Eighth Circuit have squarely rejected the very premise underlying Plaintiff's theory: "[E]ven if the MMPA's provision allowing class actions could be interpreted as providing a substantive right, which the Supreme Court has previously rejected, to the extent the MMPA prohibits arbitration, it conflicts with the FAA, and the FAA displaces the MMPA." 116 F. Supp. 3d at 941 (internal footnote omitted) (relying on *Concepcion*, 563 U.S. at 341; *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); *Cicle v. Chase Bank USA*, 583 F.3d 549 (8th Cir. 2009)).

But again, regardless, this is an issue for the arbitrator. *See* Ciesla Decl. Ex. 3 § 15.1.

(collecting authority). "The Eighth Circuit has recognized the 'judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.'" *Randazzo v. Anchen Pharms., Inc.*, No. 4:12-cv-999 CAS, 2012 WL 5051023, at *8 (E.D. Mo. Oct. 18, 2012) (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011)).

Courts in this District regularly hold, then, that "[w]here all the claims against all parties are subject to arbitration, dismissal of the action is proper." *Senda v. Xspedius Commc's, LLC*, No. 4:06-cv-1626-DJS, 2007 WL 781786, at *3 (E.D. Mo. Mar. 13, 2007) (citing *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991)); *accord, e.g.*, *Diabetic Care RX, LLC v. Express Scripts, Inc.*, No. 4:18 CV 1176 CDP, 2018 WL 3643550, at *3 (E.D. Mo. Aug. 1, 2018); *Iappini*, 116 F. Supp. 3d at 943; *see also Bray*, 2014 WL 6389569, at *3 (citing Fed. R. Civ. P. 12(b)(6)) (holding that, because plaintiff agreed to arbitrate her claims, her complaint failed to state a claim upon which relief could be granted).[8]

There can be no dispute here that all of the issues raised in Plaintiff's Complaint must be submitted to arbitration. The arbitration agreement in the TOU (again) broadly encompasses "any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or the Service . . . ." Ciesla Decl. Ex. 3 § 15.1; *see also Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 874, 878 (8th Cir. 2018) (internal quotations omitted) ("Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad. . . . [C]laims are arbitrable unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."). That agreement provides too

that "the arbitrator shall determine all claims and all issues regarding the arbitrability of the dispute." Ciesla Decl. § 15.3. And it also provides that Plaintiff "will not under any circumstances commence, maintain, or participate in any class action, class arbitration, or other representative action or proceeding against Tinder." *Id.* § 15.1.

Plaintiff claims that the price he paid for the Tinder Plus service is discriminatory, in violation of the MMPA (Compl. ¶¶ 53-58), and that the parties' arbitration agreement is unconscionable, in violation of the MMPA (*id.* ¶¶ 59-64). Both of these claims plainly "aris[e] out of or relate to" the TOU or the Service. Ciesla Decl. Ex. 3 § 15.1.; *see also Parm*, 789 F.3d at 874-878 (applying broad arbitration clause and holding that, *inter alia*, plaintiff's state and federal consumer protection claims fell within its scope); *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836-37 (8th Cir. 2010) (internal citations and quotations omitted) (enforcing arbitration clause that provided for arbitration of "all disputes arising under" the agreement, explaining that: "Arbitration may be compelled under a broad arbitration clause as long as the underlying factual allegations simply touch matters covered by the arbitration provision[,]" and "[i]t generally does not matter that claims sound in tort, rather than contract.").

Plaintiff agreed to arbitrate such claims individually in arbitration. *See id.* § 15.3. Dismissal is therefore the proper result.[9]

---

[8] If this Court disagrees that dismissal is appropriate, Tinder asks that this Court stay this action while the parties proceed to arbitration.

[9] Even if the parties' arbitration agreement were not upheld, Plaintiff has still filed suit in the wrong forum, because the TOU separately provides that: "[A]ll claims arising out of or relating to this Agreement, to the Service, or to your relationship with Tinder that for whatever reason are not submitted to arbitration will be litigated exclusively in the federal or state courts of Dallas County, Texas, U.S.A. You and Tinder consent to the exercise of personal jurisdiction of courts in the State of Texas and waive any claim that such courts constitute an inconvenient forum." Ciesla Decl. Ex. 3 § 17.

## III. CONCLUSION

For the foregoing reasons, Tinder respectfully requests that this Court find that Plaintiff's claims are subject to binding individual arbitration, compel individual arbitration of all of Plaintiff's claims, dismiss this lawsuit, and grant Tinder such other and further relief as this Court deems appropriate under the circumstances at bar.

Respectfully submitted,

HUSCH BLACKWELL LLP

By: */s/ Glennon P. Fogarty*
Glennon P. Fogarty, #42983MO
Jason Husgen, #66761MO
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
314.480.1500
314.480.1505 (fax)
*glennon.fogarty@huschblackwell.com*
*jason.husgen@huschblackwell.com*

***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 10th day of July, 2019, the foregoing was filed electronically with the Clerk of the Court via the Court's CM/ECF filing system, which sent notification of such filing to:

Daniel F. Harvath
Harvath Law Group, LLC
75 W. Lockwood, Suite 1
St. Louis, MO 63119
dharvath@harvathlawgroup.com

*Attorney for Plaintiff*

/s/ *Glennon P. Fogarty*