# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| VINNY TROIA, individually and on behalf of all similarly situated | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 4:19-CV-1647 RLW |
| v. | )<br>)<br>) |
| TINDER, INC., MATCH GROUP, LLC MATCH GROUP, INC., and DOES 1 through 10, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss, or Alternatively Stay, and to Compel Individual Arbitration (ECF No. 5). This matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Vinny Troia ("Troia") brought this Class Action Complaint (hereinafter "Compl."; ECF No. 1) individually and on behalf of all others similarly situated against Tinder, Inc. ("Tinder"), Match Group, LLC, Match Group Inc. (both Match entities referred to collectively as "Match"), and individual "Doe" defendants for Tinder's allegedly unfair and illegal age discriminatory pricing schedule and use of unconscionable contract provisions in violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§407.010, *et seq*.

Tinder markets itself as a dating application for mobile phones. (Compl, ¶20). On June 6, 2019, Troia created a Tinder account. He clicked the "Create a New Account" hyperlink on a sign-up screen. (Ciesla Decl., Ex. 1). Directly above the link that Troia clicked to create his

account was this disclosure: "By creating an account or logging in, you agree to our Terms and Privacy Policy." (*Id.*) Both the Terms of Use ("TOU") and the Privacy Policy were hyperlinked. (*Id.*)[1] Troia further alleges that he purchased a "Tinder Plus" account for $19.99. (Compl., ¶27). Tinder Plus provides supplemental services in addition to the basic Tinder account, including options to "change your location," "hide distance," "rewind your last swipe," no paid advertisements, a limited number of "super swipes" per day, the ability to hide your age, and control over Tinder users you view. (Compl, ¶25). Tinder, however, had announced that it would charge $9.99 per-month for Tinder Plus to consumers under 30 years of age. (Compl., ¶26). Troia, who was over 30 years old, was charged $19.99 for his "Tinder Plus" account. (Compl, ¶28). Troia alleges that Tinder Plus's pricing plan constitutes an "unfair practice" in violation of the MMPA by charging him a higher rate because he was over 30 years old. (Compl., ¶¶32-64).

## STANDARD OF REVIEW

Through the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, Congress has established a strong federal policy in favor of arbitration. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); 9 U.S.C. § 2 ("a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable."). "Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists 'and the dispute falls within the scope of that agreement.'" *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (quoting *Berkley v. Dillard's, Inc.*, 450 F.3d 775, 777 (8th Cir. 2006));

---

[1] The TOU is the only TOU for Tinder services. It is the same whether Troia visited the hyperlink on the initial sign-up screen or on the later Tinder Plus subscription sign-up screen. (Ciesla Decl., Ex. 1, ¶¶4-6, Exhibit 4).
The TOU is governed by Texas law. (Ciesla Decl., Ex. 3, §16). Troia appeals under Missouri law. *See* ECF No. 1. The Court utilizes both jurisdiction's laws in this opinion but reaches the same result under either.

*Kim v. Tinder, Inc.*, No. CV 18-03093 JFW (AS), 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (quoting 9 U.S.C. § 4) ("The FAA provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable.'"); 9 U.S.C. § 4 (a party may petition a federal district court for an order compelling arbitration of a dispute covered by an agreement to arbitrate). Arbitration is a matter of contract law, and favored status notwithstanding, parties cannot be compelled to arbitrate unless they have contractually agreed to be bound by arbitration. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). "The primary inquiry, therefore, is to determine whether the parties formed a valid contract that binds them to arbitrate their dispute." *Shockley*, 929 F.3d at 1017. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)) (internal marks omitted)( "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007). As the party seeking to compel arbitration, Defendants carry the burden to prove a valid and enforceable agreement. *See Jackson v. Higher Educ. Loan Auth. of Mo.*, 497 S.W.3d 283, 287 (Mo. Ct. App. 2016).

Thus, a court considering a motion to compel arbitration must decide two threshold issues, sometimes referred to as "questions of arbitrability:" 1) whether a valid arbitration agreement exists between the parties; and 2) whether the dispute falls within the scope of the arbitration agreement. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004); Daisy Mfg. Co., Inc. v. NCR Corp., 29 F.3d 389, 392 (8th Cir. 1994); *Giddings v. Media Lodge, Inc.*, 320 F. Supp. 3d 1064, 1069 (D.S.D. 2018).

## **DISCUSSION**

## I. Motion to Compel Arbitration

The TOU provides, in a Section called "Retroactive and Prospective Arbitration, Class-Action Waiver, and Jury Waiver," that the exclusive means of resolving any dispute or claim arising out of or relating to the TOU or Service shall be through binding, individual arbitration:

> The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or the Service, regardless of the date of accrual and including past, pending, and future claims, shall be BINDING ARBITRATION administered by the American Arbitration Association under the Consumer Arbitration Rules. . . . [Y]ou agree that you will not under any circumstances commence, maintain, or participate in any class action, class arbitration, or other representative action or proceeding against Tinder.

(ECF No. 19 at 5; Ciesla Decl. Exhibit 3, §15.1 (emphasis in original)).

Troia argues that he either did not agree to a TOU when he signed up for "Tinder Plus" or that such TOU was so inconspicuous that it was procedurally and substantively unconscionable and, therefore, "invalid and void *ab initio*." (ECF No. 16 at 1-3). Troia contends that the "TOU applicable to Tinder's free services are non-binding on Plaintiff's and class members' use of 'Tinder Plus'" because "they have fundamentally changed the bargain by giving Defendants hundreds of dollars per year in exchange for a materially different service." (ECF No. 16 at 4).

Troia does not dispute that he agreed to the TOU. (ECF No. 16 at 3). Troia only disputes whether he additionally assented to the TOU governing his Tinder Plus subscription, a paid service. As an initial matter, this issue is subject to arbitrability because the TOU provides "that the arbitrator shall determine all claims and all issues regarding the arbitrability of the dispute." (Ciesla Decl., Ex. 3, §15.3). The broad use of "any" dispute or claim from the Tinder Service mandates arbitration of this dispute. *See Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 835 (8th Cir. 2018) (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015) ("When an arbitration provision is broad, the federal policy favoring arbitration requires a district

court to send claims to arbitration 'as long as the underlying factual allegations simply touch matters covered by the arbitration provision.'"). The case law cited by Troia simply asserts that the parties must have meeting of the minds to the essential terms of a contract in order to have mutuality of agreement. *See* ECF No. 16 at 3-4 (citing *Superior Edge, Inc. v. Monsanto Co.*, 964 F.Supp.2d 1017, 1035 (8th Cir. 2013)). The TOU clearly states in a Section called "Acceptance of Terms of Use Agreement," that: "By creating a Tinder account or by using any Tinder service, whether through a mobile device, mobile application or computer (collectively, the 'Service') you agree to be bound by (i) these Terms of Use . . . ." (Ciesla Decl. Ex. 3, §1). In addition, the Court finds that the language of the arbitration clause broadly applies to "any dispute or claim arising out of this Agreement (including any alleged breach thereof), or the Service..." (Ciesla Decl. Ex. 3, §15.1). The Court applies these provisions, as written, and holds Troia agreed to the TOU, including arbitration of any and all disputes.

Further, Troia provides no legal support for his claim that the TOU is not applicable to the Tinder Plus service simply because it is a for-cost service. The Court holds that the TOU, and Troia's assent thereto, applies to any Tinder service, whether such service is fee-based. In fact, the TOU details terms for "in app purchases," which further demonstrates that the TOU applies to Tinder Plus and other subscription services. (Ciesla Dec., Ex. 3, §10). Indeed, the Tinder TOU would not include a discussion of paid purchases if it applied only to Tinder's free service. The Court holds that the TOU applies to Troia's Tinder Plus subscription under the plain terms of the TOU.

Troia further argues that the hybrid wrap design[2] of the TOU fails to provide adequate notice that the user will be bound by the arbitration provision. Troia argues that the hybrid wrap design of Tinder's TOU failed to provide adequate inquiry notice: "(1) the 'notice' is as far away from the action button as it could possibly be; (2) the screen is cluttered with layers of 'potentially distracting content'; and (3) because of the ambiguity of the word 'Terms' along with the fact that the word is hardly even identifiable as a hyperlink compared to the text around it, Tinder's mechanism does not 'explicitly say' that by performing the action the user agrees to be bound by the terms." (ECF No. 16 at 9).

The Court disagrees. Troia was provided access to the TOU and accepted those terms, even if those terms were not presented on the same page as the acceptance button. Here, directly above the link that Troia clicked to create his account is this disclosure: "By creating an account or logging in, you agree to our Terms and Privacy Policy." (Ciesla Decl., Ex. 1). Both the TOU and the Privacy Policy are hyperlinked. (*Id.*) The Court holds that this screen provides adequate notice under the case law that Troia would be bound by the TOU and the privacy policy. *See, e.g., Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011) (noting cases where a plaintiff was provided notice and an opportunity to review terms of service prior to

---

[2] There are three generally recognized methods of obtaining consent to terms of use: clickwrap, browsewrap, and a hybrid known as "browsewrap-that-resembles-clickwrap" or "sign-up wrap." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014). In a sign-up wrap agreement, the consumer must click an "I agree" box or otherwise clearly manifest consent to the terms of use, while the terms themselves are accessible via hyperlink. *Id.* at 1176-77. Tinder uses a sign-up wrap. Plaintiff consented to the TOU by tapping the Tinder Log In button directly below a disclosure that clearly explained that doing so constituted agreement to the TOU, which itself was accessible via a hyperlink in the disclosure.

*Kim v. Tinder, Inc.*, No. CV 18-03093 JFW (AS), 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018).

acceptance, courts have held them sufficient to put a plaintiff on notice of the terms to which she was assenting); *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (internal citation omitted) ("Sign-up wrap agreements . . . tend to be enforced if "the hyperlinked 'terms and conditions' is next to the only button that will allow the user to continue use of the website.). In any event, Troia does not dispute that he agreed to and was bound the by TOU when he created his account. (ECF No. 16 at 3; ECF No. 19 at 4). The Court holds that acceptance of the contract with Tinder, including the arbitration provision, under such conditions constitutes a binding and enforceable contract.

The Court also holds that all Troia's claims are subject to arbitration. Therefore, the Court compels arbitration of these claims and the Court dismisses Troia's cause of action.

**II.     Unconscionability**

Initially, the issue of unconscionability is for the arbitrator, not the Court, to decide. The TOU's arbitration clause provides that "the arbitrator shall determine all claims and all issues regarding the arbitrability of the dispute." (Ciesla Decl., Ex. 3, §15.3). This provision controls this issue and the enforceability of the arbitration agreement due to unconscionability is delegated to the arbitrator. Troia has not challenged this provision was unconscionable, and thus, "the arbitrator must decide the enforceability of the arbitration agreement." *Parks v. Career Educ. Corp.*, No. 4:11 CV 999 CDP, 2011 WL 5975936, at *2 (E.D. Mo. Nov. 30, 2011) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71, 130 S. Ct. 2772, 2779, 177 L. Ed. 2d 403 (2010)).

In the alternative, the Court holds that, based on the totality of the circumstances, Tinder's agreement is not unconscionable. *Leonard v. Delaware N. Companies Sport Serv., Inc.*, 861 F.3d 727, 730 (8th Cir. 2017). "Procedural unconscionability involves the contract formation process; substantive unconscionability refers to undue harshness in the terms of the contract." *Leonard*, 861

F.3d at 729 (citing *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 857-58 (8th Cir. 2008) (citing *Whitney v. Alltel Commc'n, Inc.*, 173 S.W.3d 300, 308 (Mo. App. 2005)). To determine unconscionability, this court considers the totality of the circumstances. *Cicle v. Chase Bank USA*, 583 F.3d 549, 554 (8th Cir. 2009). A contract is unenforceable if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)). Unconscionability is "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 433 (Mo. banc 2015) (internal quotation marks omitted); *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 492–93 (Mo. 2012) (citing *Cowbell, LLC v. Borc Building and Leasing Corp.*, 328 S.W.3d 399, 405 (Mo.App.2010) ("The purpose of the unconscionability doctrine is to guard against one-sided contracts, oppression and unfair surprise."); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006) ("Unconscionability principles are applied to prevent unfair surprise or oppression.").

The Court holds that unconscionability is not present in this situation. Troia is a computer systems expert, employed by his lawyer in this case. (ECF No. 6 at 1; Ciesla Decl., ¶7).[3] Troia created a Tinder account, subscribed to Tinder Plus less than two minutes later, and then filed this lawsuit on the same day. (*Id.*). Troia admitted he specifically looked for arbitration agreements and TOU, but he does not dispute that he agreed to the TOU as part of his application for the Tinder service. Rather, Troia only challenges the purported lack of assent to any TOU for Tinder Plus. (ECF No. 16 at 5-11). Thus, given Troia's clear knowledge of the TOU and prescience as

---

[3] *See* http://harvathlawgroup.com/team#professionals (last visited February 4, 2020).

to the arbitration agreement, the Court finds that this agreement is not unconscionable because there is no unfair surprise or oppression.

In addition, the Court finds no procedural unconscionability. "The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002). Troia has not presented evidence he did not understand the agreement.[4] Therefore, the Court finds no procedural unconscionability. Likewise, the Court finds no substantive unconscionability under Texas law because both parties are equally bound to the agreement and to the arbitration clause. *See In re Media Arts Grp., Inc.*, 116 S.W.3d 900, 911–12 (Tex. App. 2003) ("Texas applies a somewhat stricter standard to evaluate substantive unconscionability—focusing not only on one-sided terms, but whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the terms are so one-sided that they are unconscionable under the circumstances existing when the parties made the contract."); *Iappini v. Silverleaf Resorts, Inc.*, 116 F. Supp. 3d 932, 941–42 (E.D. Mo. 2015) (citing *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 433 (Mo.2015) (quoting *Aden v. Dalton*, 341 Mo. 454, 107 S.W.2d 1070, 1073 (1937) ("Mutuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless

---

[4] Similarly, under Missouri law, a plaintiff must provide "[e]vidence demonstrating unconscionability in that case included that the entire agreement was one-sided and difficult for the average consumer to understand; the defendant was in a superior bargaining position; the terms of the agreement were one-sided; and the plaintiff was without counsel." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 310 F. Supp. 3d 1002, 1023 (E.D. Mo.), *aff'd*, 911 F.3d 505 (8th Cir. 2018). Although this Court is at the Motion to Dismiss state, the allegations before this Court are that agreement was not one-sided and that Troia had counsel.

both are bound"; district court finding no unconscionability under Missouri law); *see* Ciesla Decl., Ex. 3, §15.3 ("If you assert a claim against Tinder outside of small claims court, your rights will be determined by a NEUTRAL ARBITRATOR, NOT A JUDGE OR JURY, and the arbitrator shall determine all claims and all issues regarding the arbitrability of the dispute. The same is true for Tinder. Both you and Tinder are entitled to a fair hearing before the arbitrator."). Finally, the class action waiver also does not make the contract and arbitration provision substantively unconscionable under Texas or Missouri law. *See D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 357 (5th Cir. 2013) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 612–13, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 332, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("The use of class action procedures, though, is not a substantive right" and arbitration agreement containing class waivers are enforceable); *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 515 (Mo. 2012) ("a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally"). Thus, the Court finds that the agreement is not unconscionable as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, or Alternatively Stay, and to Compel Individual Arbitration (ECF No. 5) is **GRANTED**. The Court **COMPELS** arbitration of the parties' dispute and **DISMISSES** this lawsuit.

Dated this 10th day of February, 2020.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**